UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-20785-CR-UNGARO/O'SULLIVAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

PHILLIP WALTON,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the defendant's Motion to Suppress Due to Illegal Search of Residence (DE# 23, 11/27/07) and Motion to Suppress Statement (DE# 24, 11/27/07).  On November 30, 2007, this case was referred to the undersigned by the Honorable Ursula Ungaro, United States District Court Judge for the Southern District of Florida. (DE# 26-27). Having held an evidentiary hearing on January 30, 2008 and carefully considered the defendant's motion, the court file and applicable law, the undersigned respectfully **RECOMMENDS** that the defendant's Motion to Suppress Due to Illegal Search of Residence (DE# 23, 11/27/07) and Motion to Suppress Statement (DE# 24, 11/27/07) be **DENIED.**

## BACKGROUND

The defendant is charged by indictment with possession of a firearm by a convicted felon in violation of Title 18, United States Code, Section 922(g)(1), possession of an unregistered weapon in violation of Title 26, United States Code,

Section 5861(d), possession of cocaine base with the intent to distribute in violation of Title 21, United States Code, Section 84(a) and carrying a firearm in relation to a drug trafficking crime in violation of Title 18, United States Code, Section 924(c). See Indictment (DE# 7, 9/28/07).

On November 27, 2007, the defendant filed his Motion to Suppress Due to Illegal Search of Residence (DE# 23, 11/27/07) and Motion to Suppress Statement (DE# 24, 11/27/07). The government filed Government's Response to Defendant's Motion to Suppress Evidence (DE# 28) on December 14, 2007. The defendant did not file a reply.

An evidentiary hearing was held on January 30, 2008 before the undersigned. The government presented testimony from the following witnesses: Detective Adrian Barazal, Detective Edwin Diaz, Detective Roody Desroches and Sergeant Diego Cruz. The defendant testified on his own behalf and presented the testimony of his girlfriend Shadonna Martin. After the hearing, the defendant filed his Supplemental Legal Memorandum to Motion to Suppress Due to Illegal Search of Residence (DE# 38, 1/30/08).  The following exhibits were admitted at the suppression hearing: Waiver of Constitutional Rights: Consent to Search form executed by the defendant (Government's Exhibit 1); the front page of the Miranda Form executed by the defendant (Government's Exhibit 2); Complaint and Affidavit by ATF Special Agent Patrick F. Higgins (Defendant's Exhibit 1) and the reverse side of the Miranda Form (Defendant's Exhibit 2).

## FINDINGS OF FACT

On September 20, 2007, law enforcement officers were dispatched to the Hampton House apartments in response to a report that gunshots, possibly from a high

2

powered assault rifle, had been fired. Officers conducted door to door checks believing that a person involved in the shooting was armed and inside one of the apartments.

The incident occurred around 2:20 p.m. Detective Diaz arrived approximately three minutes after the shooting was reported. There were about 10 other law enforcement officers in the complex when Detective Diaz arrived.  Detective Diaz noticed shell casings on the floor of the complex and bullet impact holes on the walls of the building. The bullet impact holes were concentrated around a specific apartment. An individual named Robert Peterson was inside the apartment. Mr. Peterson told police that a man named "Phil" had shot at him and that he could show the officers where "Phil" was. The officers placed Mr. Peterson in a police vehicle and drove around the complex. Mr. Peterson pointed to apartment number 10 on the second floor, the defendant's apartment.

Sergeant Cruz, Detective Barazal, Detective Diaz and a fourth officer approached the defendant's apartment. The officers were wearing jeans, police shirts, police badges and body armor.  The officers had their guns drawn. The front door of the defendant's apartment was open.[1] The officers could see the defendant (Detective Diaz recognized the defendant) and another male inside the livingroom of the apartment.[2] When the officers entered the defendant's apartment, they noticed the smell of

_____

[1] A screen door or gate in front of the door was closed but the officers could still see inside.

[2] Although the affidavit attached to the complaint states that the front door of the defendant's apartment was closed, the undersigned credits the testimony of the three officers who were present during the investigation. The agent who signed the affidavit was not at the scene. The undersigned does not find the defendant and his girlfriend's testimony that the door was closed credible.

3

marijuana. The occupants were not smoking marijuana at the time.

The officers detained the defendant, his girlfriend and another male occupant. The officers gave loud verbal commons, placed the occupants on the ground and conducted a pat down for weapons. The pat down did not reveal any weapons or contraband. The occupants were allowed to stand up after the pat down. At the same time, the officers conducted a brief protective sweep of the apartment to ensure that there were no other occupants. During the protective sweep officers saw gun shells and Sergeant Cruz observed a magazine for ammunition. The officers did not observe any lit marijuana buds or marijuana cigarettes. After determining that no other occupants were inside the apartment, the officers took the occupants outside. The defendant was not free to leave.

Although there were four law enforcement officers, Detective Barazal was the only officer who spoke to the defendant. Detective Barazal told the defendant that the officers were investigating the shooting that had occurred earlier in the day and were looking for weapons. Sergeant Cruz observed Detective Barazal speaking with the defendant. The defendant appeared cooperative and denied having any assault weapons in the apartment. The defendant agreed to allow the officers to conduct a search of his apartment. Detective Barazal and Sergeant Cruz did not have their guns drawn. Detective Barazal did not threaten the defendant or tell the defendant that if he did not consent to a search, Detective Barazal would obtain a search warrant.

After obtaining verbal consent from the defendant, Detective Barazal asked the defendant to follow him to his police vehicle to retrieve a consent form entitled "Waiver of Constitutional Rights: Consent to Search" (Government's Exhibit 1). The form

4

advised the defendant that he could "refuse to consent to [the] search." The bottom of the form contained the following language: "THIS STATEMENT IS SIGNED OF MY OWN FREE WILL WITHOUT ANY THREATS OR PROMISES HAVING BEEN MADE TO ME." Id. (capitalization in original).

Detective Barazal went over the entire consent form with the defendant. He explained that the defendant could stop the search at any time. The defendant did not appear to be under the influence of narcotics, nervous or freighted. The defendant read the form, signed the form and wrote down the time[3] and date in the presence of Detective Barazal and Sergeant Cruz.

After obtaining written consent from the defendant, the officers searched the defendant's apartment. They recovered: a utility bill with the defendant's name on it, shotgun shells, ammunition, a short barrel shotgun, a scope for a rifle, a bayonet for an AK-47, an ammunition magazine, narcotics, empty baggies used to package cocaine for sale and a digital scale. The search took approximately one hour.

The defendant was brought to the police station and placed in an interview room. At around 10:38 p.m.,[4] Detective Desroches presented the defendant with a Miranda form (Government's Exhibit 2 and Defendant's Exhibit 2). Sergeant Cruz was present in the interview room. The front of the form was entitled "Miranda Warning." The form contained the following statement in bold, capital letters: BEFORE YOU ARE ASKED

---

[3] The form was signed at 4:40 p.m.

[4] The defendant was not interviewed until around 10:38 p.m. because Detective Desroches was the lead detective on the scene and he did not return to the station until late that evening. Detective Desroches first interviewed Mr. Peterson and then interviewed the defendant.

ANY QUESTIONS, YOU MUST UNDERSTAND THE FOLLOWING RIGHTS." See Government's Exhibit 2. The form contained four statements listing Miranda rights. After each statement, the form asked "Do you understand that right?" The question was followed by the words "yes" or "no." Detective Desroches had the defendant read each right. The defendant initialed "yes" after each right indicating that he understood that right. Detective Desroches had the defendant read the following Miranda right out loud: "If you cannot afford to pay for a lawyer, one will be provided for you at no cost if you want one." Id. at ¶ 4 (capitalization omitted). The form states in bold capital letters: "THIS STATEMENT IS SIGNED OF MY OWN FREE WILL WITHOUT ANY THREATS OR PROMISES HAVE BEEN MADE TO ME." Id.  The defendant placed his initials under this statement. The defendant did not seem intoxicated and seemed to understand his rights.

The reverse side of the Miranda form (Defendant's Exhibit 2) asked the defendant if he was under the influence of alcohol, narcotics, or medication. The defendant answered "no" to each of these questions and signed the bottom of the reverse side.

After reading the defendant his Miranda rights, Detective Desroches proceeded to interview the defendant. The defendant was not threatened and was cooperative. The defendant told Detective Desroches that around 5:00 a.m. that morning, his friend was involved in an altercation with other individuals in the apartment complex. A neighbor told the defendant of the altercation. The defendant broke up the altercation by brandishing a gun. At around 11:00 a.m., the defendant observed his friend in a conflict with Mr. Peterson. The defendant took his friend into an apartment. While inside

6

the apartment, the defendant heard gun shots.

At no time during the interview, did the defendant ask for an attorney or invoke his right to remain silent. The defendant's statements were not taped because the defendant would not agree to recording his statement.

### ANALYSIS

**I.       Defendant's Motion to Suppress Evidence**

The defendant maintains that his constitutional rights were violated when law enforcement entered his residence without a search warrant and without valid consent. See Motion to Suppress Due to Illegal Search of Residence with Incorporating Memorandum of Law (DE# 23, 11/27/07). The defendant further argues that his consent was not voluntary because he was under the influence of marijuana and was coerced by the police officers' conduct. Id.

"[G]eneral[ly,] . . . warrantless searches are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." United States v. Gonzalez, 71 F.3d 819, 825 (11th Cir.1996) (quotations omitted). "[I]t is well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent to search." Id. at 827. The government has the burden of proving that consent to search was given voluntarily, as an independent act of free will and not mere acquiescence to police authority.  Florida v. Royer, 460 U.S. 491(1983).  To be considered voluntary, a consent to search must be the product of an essentially free and unconstrained choice. United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). Whether consent was in fact voluntary or a product of express or implied duress or

coercion is to be determined by the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544 (1980).

The defendant argues that he could not have voluntarily consented to the search because he was under the influence of marijuana at the time. The undersigned finds the police officers' testimony that the defendant did not appear under the influence of narcotics or otherwise intoxicated credible. The totality of the circumstances demonstrate that the defendant voluntarily consented to the search.  The defendant signed the form Entitled "Waiver of Constitutional Rights: Consent to Search" and acknowledged that he was aware of his right to refuse consent and that no threats or promises were made to him. See Consent Form (Government's Exhibit 1). There were approximately four police officers outside of the defendant's apartment at the time of the consent. The defendant was only being spoken to by Detective Barazal. There were no threats made and no guns were drawn or pointed at the defendant. The facts here are less coercive than in Garcia, 890 F.2d at 360, where the Eleventh Circuit, found a defendant's consent to be voluntary when the defendant was arrested in the front yard of his house by fourteen law enforcement agents and then taken inside after the agents conducted a protective sweep of the house.  Garcia was handcuffed when he gave the agents consent to search the house. The Eleventh Circuit noted that it had approved consent given under "far more coercive conditions" and stated, "we cannot conclude that these factors caused Garcia's consent to become involuntary." Id. at 362.  In this case, the defendant freely and voluntarily consented to the search of his apartment.

The defendant cites to Tovar-Rico v. United States, 61 F.3d 1529 (11th Cir. 1995) in support of his argument that his consent to search was not voluntary. In Tovar-

Rico, the defendant had opened the door in response to a "show of official authority" and was later told that if she did not permit the further search of the apartment, the officers would come back with a warrant. Tovar-Rico, is distinguishable from the instant case because the magistrate judge in Tovar-Rico had found that the defendant "had already observed officers explore every room in the apartment and could not reasonably have known that she could still refuse a search." Id. at 1536. Here, the officers conducted a brief protective sweep of the apartment before obtaining written consent from the defendant to conduct a search.  The consent to search form executed by the defendant specifically advised him that he could "refuse to consent to a search." See Consent Form (Government's Exhibit 1).

In his Supplemental Legal Memorandum to Motion to Suppress Due to Illegal Search of Residence (DE# 38, 1/30/08), the defendant argues that the officers could not have entered the defendant's apartment and conducted a protective sweep based on the smell of marijuana emanating from the defendant's apartment. The defendant relies on Welsh v. Wisconsin, 466 U.S. 740 (1984) which invalidated a warrantless misdemeanor arrest inside the defendant's home. This case is distinguishable from Welsh, because the officers were told by Mr. Peterson that the individual involved in the shooting was named "Phil" and identified the apartment where "Phil" was located.  The door of the defendant's apartment was open and the officers saw the defendant in the living room of his apartment. One of the officers recognized the defendant. Thus, the officers did not enter the defendant's apartment based on the smell of marijuana emanating from the apartment. See United States v. Tobin, 923 F.2d 1506, 1513 (11th Cir.1991) ( en banc ) (holding that a reasonable belief that someone else could be

inside the house permits a protective sweep). The items recovered from the defendant's apartment should not be suppressed because law enforcement obtained a valid consent from the defendant prior to conducting their search.

## II.    Defendant's Motion to Suppress Statements

The defendant seeks to suppress post-Miranda statements he made at the police station. See Motion to Suppress Statement (DE# 24, 11/27/07). The defendant argues that he did not voluntarily waive his <u>Miranda</u> rights because he was still under the influence of Marijuana at the police station. The defendant argues that he did not voluntarily waive his <u>Miranda</u> rights  because he was placed in an interview room for approximately six hours before he was read his <u>Miranda</u> rights. The undersigned does not find six hours to be an unreasonable amount of time given the circumstances of this case. Detective Desroches was conducting a thorough investigation of the shooting incident and did not return to the police station until later in the evening. Prior to interviewing the defendant, Detective Desroches interviewed Mr. Peterson about the shooting.

The defendant voluntarily waived his <u>Miranda</u> rights. In order to establish a waiver of Miranda rights, the government must show, by a preponderance of the evidence, that the defendant voluntarily, knowingly, freely and intelligently waived those rights, with knowledge of the consequences of the waiver.  <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986).  The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. <u>Edwards v. Arizona</u>, 451 U.S. 477, 482 (1981). Factors that should be considered in making such a determination include: age of the accused, educational level, level of intelligence, whether there was advisement of constitutional rights, length of detention and

the nature of the questioning.  See Townsend v. Sane, 372 U.S. 293, 307 (1962).

The defendant was read his Miranda rights by Detective Desroches and agreed to waive those rights. The statements made by the defendant, after having been read his Miranda rights, were voluntary. The defendant was not coerced nor threatened into making statements to law enforcement. The defendant indicated on the back of the Miranda form that he was not under the influence of alcohol, narcotics or medication. See Defendant's Exhibit 2. The undersigned finds that the defendant was not under the influence of marijuana when he voluntarily waived his Miranda rights. The undersigned credits the testimony of law enforcement that the defendant did not appear intoxicated and appeared to understand his rights. Accordingly, it is recommended that the defendant's statements not be suppressed.

## RECOMMENDATION

For the foregoing reasons, the undersigned the defendant's defendant's Motion to Suppress Due to Illegal Search of Residence (DE# 23, 11/27/07) and Motion to Suppress Statement (DE# 24, 11/27/07) be **DENIED**. Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Ursula Ungaro, United States District Judge, within ten (10) days of receipt of this Report and Recommendation. See Nettles v. Wainwright, 677 F.2d 404 (5th Cir.

1982).

RESPECTFULLY SUBMITTED in Chambers, at Miami, Florida, this **4th** day of February, 2008.

JOHN  J. O'SULLIVAN

UNITED STATES MAGISTRATE JUDGE

Copies provided to:

U.S. District Judge Ungaro

All Counsel of Record

12